**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE DIRECT LINEAL DECENDANTS OF ROSIE JACK AND WAGON JACK et al.<br><br>Plaintiffs,<br><br>vs.<br><br>THE SECRETARY OF THE INTERIOR et al.,<br><br>Defendants. | 3:13-cv-00657-RCJ-WGC<br><br>**ORDER** |

This case arises from Plaintiffs' attempt to be placed on the Judgment Roll of Western Shoshone Indians. Pending before the Court is Plaintiffs' Motion for Attorneys' Fees (ECF No. 48) pursuant to the Equal Access to Justice Act ("EAJA" or "the Act"). Defendants filed a Response (ECF No. 49) and Plaintiffs replied (ECF No. 50). For the reasons contained herein, the motion is GRANTED in part and DENIED in part.

**I.   FACTS AND PROCEDURAL HISTORY**

The parties are well acquainted with the facts of this case. Marion Gayle nee Sanders Miles ("Miles"), Nancy Laura nee Sanders Stewart ("Stewart"), Jody Faye White ("Jody White"),[1] the Estate of Jesse Wayne White ("Jesse White"), and William Edward White ("William White") each sought to be included on the Judgment Roll of Western Shoshone Indians. The Secretary of the Interior denied their request because Plaintiffs were found to possess less than 25% Western Shoshone blood. Plaintiffs filed this action alleging a deprival of

---

[1] Jody White has passed away since the filing of this action. (ECF No. 38).

1

due process, a denial of equal protection under the law, and a violation of the Administrative Procedure Act. (Compl. 6–10, ECF No. 1).

Plaintiffs initially sought a preliminary injunction to prevent the Secretary of the Interior from issuing a finding that they each were less than 25% Western Shoshone. Prior to the Court ruling on the preliminary injunction motion, the parties submitted a stipulation signed by counsel and accompanied by a proposed order that the case be remanded back to the agency with an instruction that the five individual Plaintiffs be added to the Judgment Roll. (Stipulation, ECF No. 12). Specifically, the stipulation stated that "[t]he Secretary and the applicants agree and stipulate that, as to each of the five applicants, the applications for inclusion on the Western Shoshone Judgment Roll may be remanded to the Secretary of the Interior with directions that each of the applicants shall be added to and included on the Western Shoshone Judgment [R]ole . . . ." (*Id.* ¶ 4).

About a week later, Defendants filed a motion to withdraw the stipulation stating that the "remand and associated directive described in the stipulation does not represent the complete and final position of the Secretary in this action." (Mot. to Withdraw 3, ECF No. 13). The Secretary's explanation of why the Court should grant the withdrawal was that "the directive to add the five plaintiffs to the Western Shoshone Judgment [R]oll [could not] be supported by the existing analysis of the current AR and [would not] thus be in accordance with the Western Shoshone Claims Distribution Action." (*Id.* at 3–4). Absent from Defendants' motion to withdraw was an explanation of why the adequacy of the administrative record was not evaluated before counsel agreed to the stipulation.

While the motion to withdraw was pending, the Court accepted the stipulation, (ECF No. 20), which essentially mooted Defendants' motion to withdraw. Defendants immediately

1  filed a motion to vacate the Court's order on the stipulation, reasserting the arguments made in

2  their motion to withdraw the stipulation. (*See* ECF No. 22).  Plaintiffs' response to the motion to

3  vacate rested on the arguments that Plaintiffs previously asserted in opposition to Defendants'

4  motion to withdraw. (*See* ECF No. 23).  The Court initially found that simply resting on previous

5  pleadings was insufficient to counter Defendants' motion to vacate because the Court was not

6  interested in "hunting for truffles buried in briefs," and it ruled in Defendants' favor. (July 23,

7  2014 Order 2, ECF No. 29).  Plaintiffs responded to the Court's ruling to vacate the order on the

8  stipulation by filing a motion to reconsider, which contained arguments as to why the Court

9  should not allow Defendants to unilaterally withdraw the stipulation that had been originally

10 presented in Plaintiffs' opposition to Defendants' motion to withdraw.  Upon a review of those

11 arguments regarding the contractual nature of a stipulation, and finding that Defendants failed to

12 demonstrate circumstances justifying a withdrawal of the stipulation, the Court granted

13 Plaintiffs' motion to reconsider.  The Court also reinstated its original order accepting the

14 stipulation of the parties that the case be remanded to the Secretary of the Interior with the

15 instruction that the individual Plaintiffs be added to the Western Shoshone Judgment Role.

16 Defendants appealed this judgement. (ECF No. 44).

17       Thereafter, Plaintiffs filed a renewed motion under the EAJA for attorneys' fees incurred

18 during the litigation. (ECF No. 37).  On January 9, 2015, the Court denied this motion without

19 prejudice for Plaintiffs' failure to sufficiently establish that they were qualified applicants as

20 required by the EAJA. (ECF No. 46).  The Court explained that there was no information upon

21 which the Court could make a finding in regards to Plaintiffs' economic status at the time the

22 case was filed, but the Court invited Plaintiffs to try once more. (*Id.*).  On March 24, 2015, the

23 Ninth Circuit Court of Appeals granted Defendants' unopposed motion to dismiss their appeal.

24

3

1  Then, on April 6, 2015, Plaintiffs filed the instant Motion for Attorneys' Fees.  Plaintiffs

2  currently seek $63,167.50 in fees for 152.2 hours of attorney work, plus $645.67 in costs.

3  **II.     DISCUSSION**

4        The EAJA states that "a court shall award to a prevailing party other than the United

5  States fees and other expenses . . . incurred by that party in any civil action . . . including

6  proceedings for judicial review of agency action, brought by or against the United States . . .

7  unless the court finds that the position of the United States was substantially justified or that

8  special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  Accordingly, in order

9  for Plaintiffs to recover fees and costs under the Act, the Court must determine (1) whether they

10  each qualify as a "party" as defined by the Act, (2) whether they are the "prevailing party" in this

11  action, and (3) whether Defendants' position was "substantially justified." *See Citizens for Better*

12  *Forestry v. U.S. Dep't of Agric.*, 567 F.3d 1128, 1131 (9th Cir. 2009); *Thomas v. Peterson*, 841

13  F.2d 332, 335 (9th Cir. 1988); *United States v. Guess*, 390 F. Supp. 2d 979, 984 (S.D. Cal. 2005).

14        **A.  "Party"**

15        Under the EAJA, a "party" is "an individual whose net worth did not exceed $2,000,000

16  at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).  "The party seeking fees has

17  the burden of establishing its eligibility" under the Act. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th

18  Cir. 1991).  The standard of proof required to show eligibility is not articulated in the statute.

19  *U.S. v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990).  However, the Ninth Circuit has

20  held that "some informality of proof is appropriate, and the decision of the district court on the

21  point is to be reviewed under the abuse of discretion standard." *Id.*  Some courts have accepted a

22  plaintiff's affidavit as sufficient evidence of net worth. *See United States v. Heavrin*, 330 F.3d

23  723, 732 (6th Cir. 2003) (holding that a plaintiff's bare assertions that his or her net worth falls

24

under two million dollars will generally be insufficient to show eligibility, but rather "the movant should at least proffer an affidavit showing that the statutory criteria has been met"). Yet even informal proof must include some financial information whereby the court may determine whether the plaintiff's net worth actually falls below the threshold amount. *See 88.88 Acres of Land*, 907 F.2d at 108 (reviewing plaintiff's financial statements to verify that his net worth was less than $2,000,000).

In this case, Plaintiffs have demonstrated that they each individually did not have a net worth of more than $2,000,000 when this case was initially filed. In support of Plaintiffs' previous motion for attorneys' fees, Plaintiffs submitted a single affidavit in which Plaintiff Stewart attested on behalf of all the individually named Plaintiffs that they each "did not have a net worth in excess or $2,000,000 nor were any of them the owner of an [entity] the net worth of which exceeded $7,000,000 or which employed more than 500 employees." (Stewart Aff. ¶ 7, ECF No. 21-1). Based on this information alone, the Court could not make a finding that Plaintiffs truly were eligible under the EAJA. As such, the Court directed that if Plaintiffs refiled their motion for attorneys' fees that they include separate affidavits in which each Plaintiff attested to his or her assets and liabilities. Plaintiffs have complied.

Plaintiff Stewart attests that at the time this case was filed she "individually had assets of approximately $290,000 and liabilities of $44,300, for a net worth of approximately $245,700." (Stewart Aff. ¶ 4, Mar. 27, 2015, ECF No. 48-4). Plaintiff Miles attests that at the time this case was filed she "individually had assets of approximately $25,000 and liabilities of $13,000, for a net worth of approximately $12,000." (Miles Aff. ¶ 4, ECF No. 48-5). Plaintiff William White attests that at the time this case was filed he "individually had assets of approximately $140,000 and liabilities of $74,000, for a net worthy of approximately $66,000." (William White Aff. ¶ 4,

5

ECF No. 48-6). And Elizabeth Ann White, on behalf of Jody White and Jesse White, who are deceased, attests that neither Jody White nor Jesse White had any assets or liabilities at the time this case was filed. (Elizabeth White Aff. ¶¶ 6–7, ECF No. 48-7).

The Court finds that these affidavits provide sufficient information to allow the Court to find that the individually named Plaintiffs qualify as a "party" under the EAJA. While unaccompanied by financial statements, the estimation of net worth based on the assets and liabilities held by each Plaintiff satisfies the Court that they fall within the purview of the Act. *See 88.88 Acres of Land*, 907 F.2d at 108 (allowing informal means to proving that the plaintiff is a "party" under the EAJA). Moreover, Plaintiffs' showing here complies with the Court's previous Order, which instructed that each of them make a good faith showing of their respective assets and liabilities. (*See* Jan. 9, 2015 Order 6, ECF No. 46 ("If Plaintiffs were able to attest to the value of their assets against their outstanding liabilities at the time of filing, then that would likely give the Court the information necessary to determine whether the statutory criteria has been met.")).

**B.  "Prevailing Party"**

 "[A] 'prevailing party' under the EAJA must be one who has gained by judgment or consent decree a 'material alteration of the legal relationship of the parties.'" *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (quoting *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).  Litigants who succeed in obtaining their desired relief from the court establish themselves as the "prevailing party" "regardless of whether the federal court's order addressed the merits of the underlying case."  *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007) (citing *Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005)).

6

Plaintiffs are the prevailing party in this litigation.  Although the Court never reached the merits in this case, the stipulation signed by both parties provided the Plaintiffs with the relief they sought—inclusion on the Judgment Roll of Western Shoshone Indians.  The stipulation was accepted by the Court, and despite the ensuing confusion as to whether Defendants' motion to withdraw the stipulation had been properly considered, the Court unequivocally held that Defendants failed to demonstrate "good cause for withdrawal in this case" and that "the stipulation should . . . be binding." (Oct. 24, 2014 Order 4, ECF No. 36).  By establishing that the stipulation remained effective, the Court solidified Plaintiffs' position as the prevailing party in this litigation. *See Klamath Siskiyou Wildlands Ctr. v. BLM*, 589 F.3d 1027, 1035 (9th Cir. 2009) (recognizing that that to be a "prevailing party," the plaintiff must receive a material alteration of the legal relationship of the parties "that is judicially sanctioned").

**C.  "Substantially Justified"**

"It is the government's burden to show that its position was substantially justified." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).  Substantially justified, as used in the EAJA, means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).  "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Meier*, 727 F.3d at 870 (quoting *Pierce*, 487 U.S. at 565).

Here, Defendants have not carried their burden to establish that their opposition in this case was substantially justified.  In fact, rather than respond to Plaintiffs' contentions that the government's position in this case was not substantially justified, Defendants completely ignore the issue.  The Court can only speculate as to why Defendants chose not to address this factor of the EAJA analysis, but their failure to do so necessarily means that the burden has not been met.

7

Accordingly, the Court is compelled to find that the position of the United States was not substantially justified here.

### D. Award of Attorneys' Fees

Since Plaintiffs are a "prevailing party" under the EAJA, and because Defendants have failed to prove that the government's position was substantially justified in this case, Plaintiffs are entitled to an award of attorneys' fees. 28 U.S.C. § 2412(d)(1)(A) (stating that a court "*shall award* to a prevailing party . . . fees and other expenses of attorneys") (emphasis added). As with any award based on a fee-shifting statute, "[t]he amount of attorneys' fees awarded under [the] EAJA must be reasonable." *Nadarajah v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009). Furthermore, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs' counsel asserts that they spent a total of 152.2 hours on this litigation. As Defendants aptly point out, counsel's time entries demonstrate that this number is excessive. For example, on October 30, 2013, Attorney Treva Hearne spent 6.1 hours to "read file sent by client; [r]esearch the historical maps of the area and request those maps from client." (Fee Report 1, ECF No. 48-1, Ex. 2). This entry provides absolutely no indication as to why it took Hearne nearly an entire work day to read through a single file and find maps of the area.

Similarly, on October 31, 2013, Plaintiff's counsel spent 6.4 hours reading "The Road," which is apparently a history of the Western Shoshone. (*Id.*). The book presumably provided counsel with the context necessary to adequately and properly perform her function in this case. However, the fact that Hearne considers this legal research for which her clients should be billed $2,560 (6.4 hours at $400 per hour) is extremely troubling. It is worth noting that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quotations and citation omitted). Attorneys are expected to exercise "billing judgment" and failure to comply with this "ethical[] . . . obligat[ion]" results in an exclusion of "hours from [a] fee submission." *Id.*

As yet another instance of overbilling, the Court notes that from March 25, 2015 to April 1, 2015, Plaintiffs' counsel reportedly spent approximately six hours to "draft new EAJA fee application." (Fee Report 3). The current fee application is nearly identical to the one previously submitted by Plaintiffs, with a few minor updates regarding the procedural posture of the case. The Court cannot fathom why it would take counsel almost six hours to make these changes.[2] Moreover, it was Plaintiffs' own failure in providing sufficient evidence of their qualifications to receive an award under the EAJA that created the need to refile the motion. It is completely unreasonable for Plaintiffs to think that Defendants should reimburse them for this mistake. *See Fox*, 131 S. Ct. at 2214 (stating that a fee award should not reimburse the plaintiff for work that "that bore no relation to the grant of relief").

Given counsel's demonstrated inability to exercise proper billing judgment, the Court finds that an overall reduction to the number of hours reportedly billed in this case is warranted, since many of the entries in the Fee Report should have "demanded little of counsel's time."

---

[2] For example, the instant Motion includes a three sentence paragraph regarding the appeal that was voluntarily dismissed in the Ninth Circuit. (Mot. 5, ECF No. 48). The substance of the Motion otherwise conforms to that of the previously filed motions for attorneys' fees. (*C.f.* ECF Nos. 21, 37).

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950 (9th Cir. 2007) (quotation and citation omitted). As such, the Court finds that a 50% reduction to the total compensable hours is appropriate. Plaintiffs may recover attorneys' fees for 76.1 hours.

The EAJA states that the "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).  Thus, a departure from the $125 per hour limit is allowed only to adjust for an increase in the cost of living or if a special factor supports such an award.

The Court recognizes that an upward adjustment for increased cost of living is routinely made in EAJA cases.  The Ninth Circuit has adopted a calculation for determining what the appropriate cost-of-living increase should be. *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005) ("Appropriate cost-of-living increases are calculated by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U") for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate.").  The adjustments for 2013, 2014, and 2015, which represents the time during which counsel's work was performed in this case, are approximately $186.55, $188.78, and $188.75, respectively.

Nevertheless, Plaintiff's counsel request fee rates of $400 for Attorney Hearne and $375 for Attorney Serreze.  Plaintiffs argue that these rates are justified not only based on the cost-of-living increase, but also based on counsel's skill and expertise.  Under the EAJA, exceptional skill and expertise can be considered a "special factor" to justify a fee award at a rate beyond the

statutory maximum. *See Pierce*, 487 U.S. at 571–72 (recognizing that the "special factor" exception "must refer to attorneys 'qualified for the proceedings' in some specialized sense"). That skill and expertise, however, must be "needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* at 572.  An identifiable practice specialty could constitute a specialized skill. *Id.*

Plaintiffs argue that Hearne is an expert in the area of Indian Law "by virtue of her extensive practice and Continuing Legal Education courses." (Mot. 14).  Plaintiffs argue that Serreze is an expert at federal litigation, which they contend "is also a specialty area." (*Id.*).  The Court acknowledges that Indian Law may be sufficiently outside the mainstream of general practice that it requires special expertise. *See NLRB v. Pueblo of San Juan*, 305 F. Supp. 2d 1229, 1237 (D.N.M. 2003).  But "federal litigation" cannot be considered a specialized skill for purposes of the EAJA since knowledge thereof would generally be held by any attorney practicing in federal court.  And as stated, even an extraordinary level of general lawyerly knowledge is insufficient to trigger the "special factor" exception to the billing rate set by the EAJA. *Pierce*, 487 U.S. at 572.

Even though Indian Law may be considered a specialized practice area, it is unclear what percentage of this case actually required Hearne to draw upon here expertise.  Indeed, much of the work in this case involved issues of federal procedure as much as issues specific to Indian Law.  It would therefore be unjust to award Plaintiffs attorneys' fees at a higher rate based on Hearne's expertise for all hours worked in this case.  Moreover, Hearne billed a considerable number of hours to research Plaintiffs' case, which counsel acknowledges fell outside the scope of her previous experience.  The Court, therefore, finds that it would be inappropriate to require Defendants to compensate Plaintiffs at the rates reportedly billed by Plaintiffs' counsel.

Based on these considerations, the Court finds that the hours billed by Hearne and Serreze will be compensated at a rate of $225. This is above the statutory maximum as it takes into account the upward adjustment for cost of living as well as Hearne's expertise in Indian Law, which the Court agrees was relevant in this case to some degree. The Court finds further that the increase is warranted as to Serreze's contributions not because of her asserted expertise in federal litigation, but because Plaintiffs struggled to find other counsel that would take their case. (*See* Mot. 18). Plaintiffs are awarded an attorneys' fee of $17,122.50.

Plaintiffs additionally request that they be compensated for their expenses related to this case, which is also allowed by the EAJA. *See* 28 U.S.C. § 2412(d)(1)(A). The reported expenses are $645.67. (Fee Report 2, 4). The Court finds that these costs should be reimbursed, with the exception of $29.94 that was spent to send affidavits to Plaintiffs as support in the previous motion for attorneys' fees that the Court found to be insufficient to establish their eligibility under the EAJA. Accordingly, Plaintiffs are awarded costs of $615.73.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorneys' Fees (ECF No. 48) is GRANTED in part and DENIED in part. Plaintiffs are awarded attorneys' fees in the amount of $17,122.50 and costs in the amount of $615.73, for a total award of $17,738.23.

IT IS SO ORDERED.

Dated: April 28, 2015

_____
ROBERT C. JONES
United States District Judge